UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EMILE P. HENRY II, )
 )
    Petitioner, )
 )
vs. ) Case No. 4:07CV1835 ERW
 )
PAT SMITH,[1] )
 )
    Respondent. )

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Frederick R. Buckles [doc. #14], pursuant to 28 U.S.C. § 636(b). Petitioner has filed Objections to the Report and Recommendation [doc. #17]. When a party objects to a magistrate's report and recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations to which the party objects. *See United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)).

**I.    BACKGROUND**[2]

Petitioner was charged with two counts of Robbery First Degree, two counts of

---

[1] Petitioner is currently incarcerated at Potosi Correctional Center (PCC) in Mineral Point, Missouri. Because Troy Steele is Warden at PCC, he should be substituted for Pat Smith as proper party respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United Stated District Courts. The Court hereby directs the Clerk's Office to change the name of Respondent to Troy Steele.

[2] The Magistrate Judge's Report and Recommendation recites the facts and procedural history of this case, therefore this Court will not repeat it here. The Court will, however, note those facts which are pertinent to the discussion.

1

Kidnapping, and four counts of Armed Criminal Action. A jury in the Circuit Court of St. Louis County, Missouri convicted Petitioner of two counts of Robbery First Degree, and acquitted Petitioner on the remaining six counts. On June 18, 2004, Petitioner was sentenced to two terms of fifteen years' imprisonment, with such terms to be served consecutively.[3] On April 26, 2005, the Missouri Court of Appeals, Eastern District, affirmed Petitioner's conviction and sentence. *See State v. Henry*, 165 S.W.3d 498 (Mo. Ct. App. 2005) (per curiam). On July 18, 2005, Petitioner filed a motion for post-conviction relief, which was denied without a hearing. The Missouri Court of Appeals, Eastern District, affirmed the denial of post-conviction relief on December 19, 2006. *See Henry v. State*, 209 S.W.3d 50 (Mo. Ct. App. 2006) (per curiam).

On October 25, 2007, Petitioner filed his Petition for Writ of Habeas Corpus [doc. #1] with this Court. His Petition sets forth three grounds for federal habeas relief: (1) that the trial court erred in overruling Petitioner's objection to the prosecutor's closing argument about the Metrolink extension to the Galleria shopping mall bringing more criminals to St. Louis County; (2) that the trial court erred in admitting evidence that Petitioner attempted a robbery and flourished his gun at a man in another automobile; and (3) that direct appeal counsel was ineffective for failing to brief and argue on appeal that the trial court erred in failing to sustain an objection to the prosecutor's closing argument which improperly shifted the burden of proof and highlighted Petitioner's failure to testify. Magistrate Judge Frederick R. Buckles rejected each of Petitioner's three grounds for relief. Petitioner objected to each of the Magistrate Judge's

---

[3] Because Petitioner is challenging a sentence to be served in the future, Missouri Attorney General Chris Koster should be added as a proper party respondent to the cause. *See* Rule 2(b), Rules Governing Section 2254 Cases in the United Stated District Courts. The Court hereby directs the Clerk's Office to add Missouri Attorney General Chris Koster's name as a Respondent.

2

findings.

## II.     STANDARD OF REVIEW

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." *Tokar v. Bowersox*, 198 F.3d 1039, 1045 (8th Cir. 1999) (internal quotation omitted). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004).

## III.    DISCUSSION

**EXHAUSTION OF STATE LAW REMEDIES**

A federal district court cannot grant federal habeas corpus relief under 28 U.S.C. § 2254 to "a person in custody pursuant to the judgment of a State court," "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §

3

2254(b)(1)(A); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."). In order to determine if the exhaustion requirement has been met, "the court must determine if the petitioner fairly presented 'the federal constitutional dimensions of his federal habeas corpus claim to the state courts.'" *Smittie v. Lockhart*, 843 F.2d 295, 296 (8th Cir. 1988) (quoting *Laws v. Armontrout*, 834 F.2d 1401, 1412 (8th Cir. 1988)). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile state remedies', through which the petitioner can present his claim." *Id.* (quoting *Laws*, 834 F.2d at 1412). This Court agrees with Magistrate Judge Buckles, and finds that Petitioner has exhausted each of his three claims, either by presenting them to a state court upon which they were determined on the merits or because there are no available state remedies.

**PROCEDURAL DEFAULT**

"A section 2254 applicant's failure to raise a claim in state post-conviction proceedings results in procedural default of that claim." *Lyons v. Luebbers*, 403 F.3d 585, 593 (8th Cir. 2005); *see also Skillicorn v. Luebbers*, 475 F.3d 965, 976 (8th Cir. 2007) ("Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted."). "To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording such courts a fair opportunity to apply controlling legal principles to the facts bearing upon [the] claim." *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotations and citations omitted; alteration in original). "A claim has been fairly presented when a petitioner has

4

properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition." *Id.* at 1021 (internal quotations omitted). The Court finds that Petitioner's three grounds for relief are not procedurally barred, due to his raising them in state court post-conviction proceedings, and will consider each ground, in turn.

**GROUND ONE**

Petitioner's first ground for federal habeas relief is that the trial court erred in overruling Petitioner's objection to the prosecutor's closing argument about the Metrolink extension to the Galleria shopping mall bringing more criminals to St. Louis County. On appeal, Petitioner challenged the trial court's ruling, and upon review of the claim for plain error, the Missouri Court of Appeals, Eastern District, denied relief.

It is well established that prosecutorial misconduct in closing arguments may result in the reversal of a conviction. *United States v. Norton*, 639 F.2d 427 (8th Cir.1981). However, the trial court has broad discretion in controlling closing arguments and this court will not reverse absent a showing of abuse of discretion. *United States v. Segal*, 649 F.2d 599, 604 (8th Cir.1981). The facts of each case must be examined independently to determine if the prosecutor's remarks were unduly prejudicial to the defendant. *United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir.1976). The conviction will be reversed if this court ascertains that the jury verdict could reasonably have been affected by the prosecutor's improper comments. *Id.*

The Court of Appeals for the Eighth Circuit has set forth a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir.1985); *United States v. Johnson*, 968 F.2d 768, 769 -770 (8th Cir. 1992).

The Court will first examine the propriety of the challenged statements made by the prosecutor.

**a.     Improper Argument**

Petitioner argues that he was denied a fair trial because the following portion of the prosecutor's closing argument was improper:

> Think about it.  People are going to be watching what happens in this case. Send a message, send a message out there to every criminal.  Now we're getting Metrolink to come out here.  You know where that comes from.  We're going to have some criminals coming across the river.
> *****
> Send a message out to these people who want to come out to the Galleria to try and do crimes, you don't do that here in St. Louis County at the Galleria.  We shop there.  That is our store.  Find him guilty of everything.

Resp. Ex. A-3 at 781.

In his petition [doc. #1], Petitioner contends that the prosecutor's comments improperly argued facts not in the record, appealed to the jurors' fears regarding their personal safety, and infused improper racial overtones into the case.  Petitioner argues that by taking a fact outside the record involving a future Metrolink light-rail connection linking East St. Louis, Illinois to the Galleria shopping mall in St. Louis County, Missouri and incorporating it into his closing argument, the prosecutor violated three basic prohibitions in closing statements:  (1) reference to facts outside the record; (2) attempts to inject "prejudice" in to the minds of the jurors, and; (3) appeals to racial intolerance and stereotyping.  In his Objections to the Magistrate Judge's Report and Recommendation [doc. #17], Petitioner argues that the prosecutor's arguments mirror arguments that have otherwise been found to be improper and warranted reversal.  Specifically, Petitioner cites *United States v. Lee*,[4] 743 F.2d 1240 (8th Cir. 1984); *United States v. Solivan*,[5]

---

[4] In *Lee*, the "District Attorney argued as follows: [S]muggling in 640 pounds of marijuana is definitely wrong.  It is a crime and they should be convicted.  All the drug smugglers around should be told by your actions that bringing in marijuana is wrong." *Lee*, 743 F.2d at

937 F.2d 1146 (6th Cir. 1991); and *United States v. Monaghan*,[6] 741 F.2d 1434 (D.C. Cir. 1984).

The Eighth Circuit has held that "[u]nless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible." *United States v. Lewis*, 547 F.2d 1030, 1036-37 (8th Cir.1976); *United States v. Stead*, 422 F.2d 183, 184 (8th Cir. 1970). In *Solivan*, the court stated that it is necessary to "examine closely the substance of the prosecutor's statements to determine whether they were calculated to inflame. Our determination will depend on whether the statements appeal to community interests in light of current events and the nature of the specific case."[7] *Solivan*, 937 F.2d at 1153.

---

1252.

[5] In *Solivan*, the prosecutor urged the jury "to tell [the defendant] and all of the other drug dealers like her that we don't want that stuff in Northern Kentucky . . . ." *Solivan*, 937 F.2d at1148. The Court found these remarks "improperly appealed to national or community interests of the jurors" and concluded that "[i]t is error for a prosecutor to direct the jurors' desires to end a social problem toward convicting a particular defendant." *Id.* at 1153; *see also Johnson*, 968 F.2d at 771.

[6] In *Monaghan*, the court stated: "A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future law breaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear." *Monaghan*, 741 F.2d at 1441.

[7] "The fairness or unfairness of comments appealing to the national or local community interests of jurors in a given instance will depend in great part on the nature of the community interest appealed to, and its relationship to, and the nature of, the wider social-political context to which it refers. The correlation between the community interest comments and the wider social-political context to a large extent controls the determination of whether an appeal is deemed impermissible because it is calculated to inflame passion and prejudice. The Supreme Court in *Viereck* framed the inquiry to incorporate both the purpose and effect of the comments. In that case, in the light of contemporaneous events, which had great impact on the emotions and perceptions of jurors, the remarks 'could only have ... arouse[d] passion and prejudice.'" *Solivan*, 937 F.2d at 1152 (quoting *Viereck v. United States*, 318 U.S. 236, 247 (1943)).

This Court agrees with the Missouri Court of Appeals' determination that the statements at issue were indeed improper due to their "racial and socioeconomic overtones." The statements were irrelevant to the facts or issues of the case and had the purpose and effect of arousing passion and prejudice. *See Viereck*, 318 U.S. at 247. The statements that "[p]eople are going to be watching what happens in this case" and to "send a message out there to every criminal" constituted "an emotional appeal calculated to persuade the jury to decide the case on other than the facts before it."[8] *Lee*, 743 F.2d at 1253. The statements suggested to the jury that convicting defendant would help keep this area of the community free of criminality, and urged the jury to send a message to the community, and all criminals across the river, because they "presumably would be convicted just like defendant in this case." *Solivan*, 937 F.2d at 1155. This Court finds no evidence in the record that defense counsel did anything to provoke the statements as in *Lee*. Furthermore, appealing to community interests in light of current events, in this case ensuring the safety of the public following the completion of the Metrolink, placed an unwarranted burden on Petitioner. Focusing on not only the criminality of the conduct, but also taking the further step of appealing to the jurors' sense of community to deter future criminal conduct, is an impermissible and improper method of conducting closing arguments.

In addition, this Court finds that the prosecutor's statement, "Send a message out to these people who want to come out to the Galleria to try and do crimes, you don't do that here in St.

---

[8] In *Lee*, the prosecutor made a substantially similar argument by stating, "[a]ll the drug smugglers around should be told by your actions that bringing in marijuana is wrong . . . What you do as jurors is going to be watched here. You can better believe that each and every drug smuggler is watching what happens here today." *Lee*, 743 F.2d at 1252-53. Even though the prosecutors' impermissible arguments in *Lee* and *Solivan* appealed to the community's and nation's interest in curtailing the illegal use and sale of drugs, the statements in the present case are not dissimilar in their plea to the jurors' sense of community.

Louis County at the Galleria" because "[w]e shop there" and "[t]hat is our store" to be improper. However, the statement of the prosecutor "did not constitute a direct suggestion that the jury had a personal stake in the outcome of the case." *United States v. Kopituk*, 690 F.2d 1289, 1342 (11th Cir. 1982).

Over-stepping the boundaries of aggressive advocacy does not serve the interests of justice or of the profession. This Court agrees that "the pressing nature of the problem does not give prosecutors license to encumber certain defendants with responsibility for the larger societal problem in addition to their own misdeeds." *Johnson*, 968 F.2d at 771. As stated in *Berger v. United States*, 295 U.S. 78 (1935), the conduct of government prosecutors must meet a high standard:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Id.* at 88-89.

**b.     Prejudicial Effect**

Having made a determination that the prosecutor's statements were improper, a court "must decide whether the conduct, viewed in the context of the entire trial, was so offensive that it deprived the defendant of a fair trial." *Hernandez*, 779 F.2d at 460; *see also United States v. Bohr*, 581 F.2d 1294, 1301 (8th Cir. 1978) (citations omitted) ("The dominating question, always,

9

is whether the argument complained of was so offensive as to deprive the defendant of a fair trial."). In determining the prejudicial effect of prosecutorial misconduct, this Court considers three factors: (1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the trial court." *Johnson*, 968 F.2d at 771.

### 1. Cumulative Effect of Misconduct

Petitioner argues that the statements made by the prosecutor in his closing argument prejudiced the jury and affected the outcome of his case. "Prejudice sufficient to warrant reversal may result from the cumulative effect of repeated improper comments by the prosecutor." *Hernandez*, 779 F.2d at 460. However, "'a single misstep' on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated." *Johnson*, 968 F.2d at 771 (quoting *Solivan*, 937 F.2d at 1150).

The Missouri Court of Appeals determined that it was not reasonably probable that Petitioner would have been acquitted on the two counts of Robbery First Degree if the argument had been excluded. There was no finding by the Missouri Court of Appeals that the prosecutor's statements, in closing arguments, were sufficiently prejudicial that they "influenced the jury by diverting its attention away from its task to weigh the evidence and submit a reasoned decision . . . ." *See Solivan*, 937 F.2d at 1153. In fact, the Court of Appeals concluded that the record shows the jury to be very deliberative in that it only found the defendant guilty on two of the eight charges he was facing. Petitioner failed to show that the improper statements were "so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir. 1987) (citations omitted). Likewise, Petitioner

failed to provide support for his contention that there was a reasonable probability that verdict might have been different had the error not occurred. *Id.*

Thus, this Court cannot conclude that the it was unreasonable for the Missouri Court of Appeals to find that the prosecutor's remarks did not prejudicially affect the Petitioner's substantial rights so as to deprive Petitioner of a fair trial.

### 2. Strength of the Evidence of Defendant's Guilt

The Eight Circuit has stated that, in regard to the strength of the evidence, "[o]ne important factor to consider in determining whether a closing argument is so prejudicial to require reversal of the conviction is the amount of evidence indicating defendant's guilt. If the evidence of guilt is overwhelming, an improper argument is less likely to affect the jury verdict. On the contrary, if the evidence of guilt is weak or tenuous, the existence of prejudice is more easily assumed." *Splain*, 545 F.2d at 1135 (citations omitted). Reversal is appropriate only if the court determines that the jury verdict could reasonably have been affected by the argument. *Id.*

Petitioner presumptively relies on *State v. Ellinger*, 549 S.W. 2d 136 (Mo. Ct. App. 1977)[9] to argue that the weight of the evidence against Petitioner was not so overwhelming that the jury was not susceptible to improper arguments by the prosecutor in ascertaining his guilt. The prosecutor's statements that "we shop there" and "that is our store" did not "clearly direct[] the jury's attention to the possibility of personal harm to themselves from similar actions by the defendant if they failed to convict the defendant." *Id.* at 139. This Court does not agree that *Ellinger* so closely parallels the present case, compelling the Court to find that the statements

---

[9] The prosecutor argued "you want to be able to go out . . . without fear of getting carved up, shot." *Id.* at 139.

resulted in a prejudicial atmosphere such that the possibility of a fair and impartial trial was foreclosed. *See Ellinger*, 549 S.W.2d at 140.

Petitioner also contends that the length of jury deliberations, along with the communication to the trial court concerning difficulty in agreeing on a verdict, shows that he was deprived of a fair trial. As previously stated, this Court reviews each case individually and the facts of each case must be examined independently, to determine if the prosecutor's remarks were unduly prejudicial to the defendant. *Splain*, 545 F.2d at 1135.

It is not inconceivable that, in the light of contemporaneous events involving the Metrolink, the statements could potentially impact the emotions and perceptions of jurors had the evidence only been marginal. *See Johnson*, 968 F.2d at 772 ("Where the prosecutor's remarks are improper and the evidence is marginal, the conviction will be reversed."). However, in contrast to *Johnson*, the evidence of Petitioner's guilt in this case was overwhelming. The Court finds the strength of the evidence was sufficient to justify a determination that the statements were not prejudicial and could not have reasonably affected the jury. *See Stead*, 422 F.2d at 184 (the Government's argument urging the jury, "for the good of the community that you represent, rid ourselves of these burglars, sneak thieves in the night * * * and find him guilty as charged," was within permissible bounds even without cautionary admonition by the court, where evidence was ample to support a finding that accused was guilty and was a burglar).

Therefore, due to the foregoing analysis, this Court cannot conclude that the challenged closing statements of the prosecutor, in consideration of the strength of the evidence, prejudicially affected Petitioner's substantial rights so as to deprive Petitioner of a fair trial.

3. **Curative Actions Taken by the Trial Court**

Petitioner argues that the trial court's instructions to the jury, that arguments are not

evidence, did not cure any error made by the prosecutor. In *Newlon v. Armontrout,* the court expressed the following sentiment: "The State's argument that the standard jury instruction that statements made by counsel during opening and closing argument are not evidence cures any error made by the prosecutor is without merit. Such a broadly sweeping rule would permit *any* closing argument, no matter how egregious." *Newlon v. Armontrout*, 885 F.2d 1328, 1337 (8th Cir. 1989), *cert. denied,* 497 U.S. 1038 (1990). While this Court agrees with the sentiment expressed in *Newlon*, the "lack of a specific and immediate cautionary instruction is not serious enough to tip the balance toward reversal," especially in view of the overall strength of the evidence against a defendant. *United States v. Barrera*, 628 F.3d 1004 (8th Cir. 2011) (quoting *Hernandez*, 779 F.2d at 461).

In the present case, the trial court's instruction was the general instruction stating that arguments made in closing are not evidence. There was no admonition by the trial court urging the jury to disregard any statements about sending messages. It is true, that "ideally, the trial court should give a cautionary instruction to the jury immediately after the misconduct occurs." *Id.* However, Petitioner has presented no evidence to support the contention that the trial court's instruction had no curative effect on the jury. To the contrary, the jury did not find Petitioner guilty on six of the eight counts. The jury was deliberate in contemplating the guilt or innocence of Petitioner on all the counts he was facing. In light of the foregoing discussion, the Court concludes that the standard instruction was sufficient and prevented Petitioner from being prejudiced.

After reviewing all of these factors, considered in the context of the trial, the Court concludes that there was no prejudicial effect caused by the improper statements. As a result, this Court finds that there was no prosecutorial misconduct requiring reversal. Therefore, the

Court concludes that the decision by Missouri Court of Appeals did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The Court finds that Petitioner is not entitled to relief on Ground One of the petition.

**GROUND TWO**

Petitioner's second ground for federal habeas relief is that the trial court erred in admitting evidence that Petitioner attempted a robbery and flourished his gun at a man in another automobile. Petitioner argues that the evidence of the uncharged misconduct was not legally relevant in showing that he committed two counts of Robbery First Degree. Petitioner raised this claim on direct appeal, and the Missouri Court of Appeals denied relief after reviewing the claim for plain error.

It is not within a federal habeas court's province "to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Only evidentiary rulings that are "so grossly prejudicial that they fatally infect the entire trial, preventing it from being fundamentally fair, will justify habeas corpus relief." *Henderson v. Norris*, 118 F.3d 1283, 1286 (8th Cir.1997); *see also Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir. 2001). "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." *Gee v. Groose*, 110 F.3d 1346, 1350 (8th

14

Cir.1997) (en banc).” *Frost v. Kemna*, 2010 WL 3782060 at *10 (E.D. Mo. 2010). Consequently, rather than making a determination on whether the evidence was properly admitted, this Court will only determine whether the evidentiary ruling violated Petitioner's constitutional rights.

Under Missouri law, the general rule is that "evidence of uncharged crimes, wrongs, or acts . . . is inadmissable for the purpose of showing the propensity of the defendant to commit such crimes." *Harris v. Bowersox*, 184 F.3d 744, 752 (8th Cir. 1999). However, Missouri recognizes an exception to this rule "for evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged in order to present a complete and coherent picture of the events that transpired." *Id.*; *State v. Naasz*, 142 S.W.3d 869, 878 (Mo. Ct. App. 2004). "This standard for admissibility is the same as that used in federal courts and is in accord with Supreme Court precedent." *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005). The Eighth Circuit has found that the portion of the conduct which goes uncharged is admissible to show the context of the charged crimes. *United States v. Van Chase*, 137 F.3d 579, 582 (8th Cir. 1998). Simply because the uncharged conduct is criminal in its own right does not remove it as an integral part of the whole story. *Id.*

The Missouri Court of Appeals determined that the evidence of Petitioner's attempted robbery and flourishing of his gun at a man in another automobile fell within this exception.

> In the present case, the evidence of defendant's attempted robbery of a man at the ATM was part of the sequence of events surrounding the charges for which he was being tried. The testimony of Mueller and Cowhey was that defendant abducted them in a vehicle at gunpoint and forced them to drive several different places. As part of this series of events, Mueller and Cowhey were instructed to drive to an ATM where defendant attempted to rob a man. This evidence helped present a complete picture to the jury of the occurrences for which defendant was being charged.

Resp. Exh. E., Memo. at 5-6.

This Court cannot say that the Missouri Court of Appeals unreasonably applied any clearly established federal law, nor has Petitioner shown that a reasonable probability exists that, had the evidence been excluded, the result would have been different. As a result, the Court finds that Petitioner is not entitled to relief on Ground Two of the petition.

**GROUND THREE**

Petitioner's third ground for federal habeas relief is based on an ineffective assistance of counsel argument. Petitioner raised this claim in his motion for post-conviction relief and on appeal of the denial of the claim. Petitioner argues that direct appeal counsel was ineffective for failing to brief and argue on appeal that the trial court erred in failing to sustain an objection to the prosecutor's closing argument which improperly shifted the burden of proof and highlighted Petitioner's failure to testify. The Missouri Court of Appeals conducted a review of the claim for plain error and denied Petitioner relief.

An ineffective assistance of counsel claim requires a showing that counsel's conduct fell below the standard of professional reasonableness, and that there is a reasonable probability that the outcome would have been different had counsel acted professionally. *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). "In determining whether counsel's performance was deficient, the court should 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). This

standard is heightened in the context of a § 2254 petition, as the Petitioner must show both that he has satisfied the *Strickland* test, and that the state court applied *Strickland* "in an objectively unreasonable manner." *Underdahl v. Carlson*, 381 F.3d 740, 742 (8th Cir. 2004).

The Missouri Court of Appeals addressed Petitioner's ineffective assistance of counsel claim in his appeal from the motion court's judgment denying his post-conviction motion pursuant to Rule 29.15 without an evidentiary hearing, and determined that the motion court's decision was not clearly erroneous. In making this determination, the Missouri Court of Appeals carefully examined the record for any indication that Petitioner received ineffective assistance of counsel. This Court cannot say that the Missouri Court of Appeals unreasonably applied any clearly established federal law. As such, Petitioner's third ground for relief, that he received ineffective assistance of counsel, is properly denied.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability may only be issued when "'the applicant has made a substantial showing of the denial of a constitutional right.'" *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006). Petitioner has made no such showing. Furthermore, the Court does not believe that reasonable jurists might find the Court's decision debatable or wrong, for purposes of issuing a certificate of appealability under 28 U.S.C. § 2253(c)(1)(A). *Slack*, 529 U.S. at 483-84. Therefore, the Court will not issue a certificate of appealability as to any claim raised in the Petition.

## V. CONCLUSION

The Court has reviewed those portions of the Magistrate Judge's findings to which the Petitioner filed objections, and concludes that Plaintiff's objections are without merit. This

17

Court cannot conclude that the errors alleged by Petitioner resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Each of Petitioner's three grounds for habeas relief are rejected, as outlined in the foregoing analysis. As a result, the Court will deny the Petition for Writ of Habeas Corpus and will not issue a certificate of appealability as to any claim raised in the Petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Emile P. Henry II's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [doc. #1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised in Petitioner's § 2254 Petition.

Dated this <u>4th</u> Day of March, 2011.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE